# Rucker *v.* Tennessee Coal, Iron & Railroad Company

## *Bill to Quiet Title.*

(Decided April 4, 1912. Rehearing denied May 1, 1912.
58 South. 465.)

1. *Evidence; Judicial Notice.*—Where lands are described by government subdivision as the southwest quarter of the southwest quarter, section 28, and the northwest quarter of the northwest quarter, section 29, same township, but in different ranges, the court takes judicial notice that there are two separate tracts.

2. *Equity; Demurrer; Separate Cause of Action.*—The contention that the bill is multifarious, can only be taken by demurrer, under the express provision of section 3095, Code 1907.

3. *Same; Complaint; Separate Cause of Action.*—A bill to quiet title brought by a single complainant against a single defendant relative to separate tracts claimed by the complainant under one title and by defendant under similar title as to each tract, is not multifarious in view of equity's policy of preventing a multiplicity of suits.

4. *Quieting Title; Burden of Proof.*—In an action to quiet title where neither party has had possession, but the issue is one of title, the complainant has the burden of showing a legal title.

5. *Courts; Sale Under Order; Statutory Provision.*—Probate courts have no general jurisdiction or authority to dispose of an estate in the process of administration, the powers of disposition being special and limited; and in the absence of an affirmative showing of a substantial compliance with the statutory provision defining the grounds of its jurisdiction, such proceedings in the probate courts are coram non judice, and void.

6. *Vendor and Purchaser; Estates Created; Quit Claim Deed.*—Under a quit claim deed the grantee does not acquire anything that the grantor had previously conveyed to another, although the prior deed was not recorded.

7. *Same; Bona Fide Purchaser.*—A quit claim deed purports to convey only such interest as the grantor may have had in the property at that time, and by its own terms puts the purchaser upon inquiry as to defects in the title, or outstanding equity, and hence a grantee under a quit claim deed is not a purchaser for value and without notice.

8. *Descent and Distribution; Title of Heirs.*—At common law lands passed at the death of the ancestor eo instanti to the heir subject only to be interrupted by the personal representative in the exercise of his statutory powers, including his right by proper proceeding to sell decedent's title for the payment of debt.

[Rucker v. Tennessee Coal, Iron & Railroad Company]

9. *Same; Right of Heir as Against Administrator; Alienation.*—
The heir or devisee may alienate lands subject to the exercise of
the statutory powers of the personal representative.

10. *Executors and Administrators; Insolvent Estate; Proceedings.*
—Under the statute of 1876, creditors were the only persons to whom
notice of the proceedings for decreeing the insolvency of an estate
was required to be given.

11. *Same; Persons Bound.*—Under the statute of 1876, creditors of
the estate were the only persons barred by the decree of insolvency,
and as to all others the proceedings fixing the status of the estate
as between the personal representative and the creditors, was res
inter alios acta; hence, such decree did not divest the legal title of
the heir to the lands of the estate.

12. *Same; Right of Action; Persons Entitled.*—A personal repre-
sentative of a decedent may maintain ejectment in his own name to
recover lands of decedent not because of any title residing in him,
but because possession is necessary to the exercise of his statutory
authority.

13. *Same; Scope.*—In its general scope, administration involves all
which may be done rightfully in the preservation of the assets, and
all legal acts by the administrator in his dealings with the credi-
tors, distributees or legatees, or which may be done by them in se-
curing their rights.

14. *Same; Sales Under Order; Form.*—To divest the legal title to
land out of an heir, a special proceeding is necessary, and though
a proceeding by the personal representative for the sale of such
land occurs in the general course of his administration, it is a dis-
tinct proceeding in the nature of an action in which the petition
is the commencement, and the order of sale the judgment.

15. *Same; Collateral Attack.*—The contents of the petition examin-
ed and held that on collateral attack by one claiming against the
purchaser at the sale made under such petition, the description of
decedent's interest in the land sought to be sold was sufficient in
view of the court's policy to construe a petition upon which juris-
diction was assumed most favorably to the maintenance of the de-
cree of sale.

16. *Same; Sales Under Order; Jurisdiction.*—Where an insolvent
estate has been removed from the probate to the chancery court such
court under its original general jurisdiction for the administration
of estates may authorize a sale of land of the estate by way of a
compromise.

17. *Same; Proceedings in Chancery; Statute.*—Under the express
provisions of Acts 1911, p. 574, the chancery court in the adminis-
tration of estates removed to it from the probate court may pro-
ceed according to its own rules of practice without regard to stat-
utory requirements as to the administration of estates in the pro-
bate court.

18. *Same; Collateral Attack; Irregularity.*—Where the record af-
firmatively shows that the court had jurisdiction to order a sale
of the lands of an estate on petition of the personal representative
setting forth the necessary jurisdictional facts, that the land is sold

[Rucker v. Tennessee Coal, Iron & Railroad Company]

under such order, the sale confirmed, the purchase money paid, and a deed executed to the purchaser, the action of the court is conclusive until vacated in a direct proceeding, and neither the sale, nor the title acquired thereunder can be collaterally attacked for irregularities or defects in the proceedings.

19. *Same; Description.*—The description considered and held in view of the provision of section 2622, Code 1907, that as to the lands claimed under the sale, the description was unsufficient to confer jurisdiction and that the sale had was ineffectual to pass title.

20. *Same; Right of Purchaser; Estoppel.*—A purchaser claiming under a conveyance by an heir is not estopped from denying the validity of a subsequent sale of lands of the decedent in proceedings void for want of jurisdiction.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by E. W. Rucker against the Tennessee Coal, Iron & Railroad Company to quiet title to land. Decree for respondent and complainant appeals. Reversed and rendered.

GEORGE L. SMITH, for appellant. . The question is one of title in this case, as neither party had anything other than a mere constructive possession which is drawn to it by the title.—*O'Neal v. Prestwood,* 153 Ala. 446. Appellant acquired title under deed from Henley. Descent of title is not interrupted by the will of Thomas Peters, the ancestor.—*Tarver v. Haines,* 55 Ala. 503; *Mitchell v. Spence,* 62 Ala. 450; *Patton v. Crowe,* 26 Ala. 431. A power conferred upon two or more persons to sell land dependent upon their judgment or discretion whether the act shall be done, is a special trust or confidence, and its exercise a matter for the judgment or discretion of all, and cannot be exercised without the concurrence of all.—*Marks v. Tarver,* 59 Ala. 335; *Robinson v. Allison,* 74 Ala. 254. Such power does not extend to the administrator with the will annexed.—*Tarver v. Haines, supra; Mitchell v. Spence, supra.*—Where the persons to whom the power is given disclaimed or refused to ex-

ecute the trust, the power will be considered as annulled or revoked.—*Hinson v. Williamson,* 74 Ala. 180; Perry Trusts, 273 and 276. If the act of selling is left to the option, discretion or choice of the trustee, there is no equitable conversion until the powers are exercised by the trustee.—*Allen v. Watts,* 98 Ala. 384; 105 N. Y. 185; 110 N. Y. 159; 113 N. Y. 28; 7 A. & E. Enc. of Law, 467. Under the will, there was nothing to intercept or divest the descent of title, and it became vested in the sole heir at once.—*Scott v. Ware,* 64 Ala. 177; *Stovall v. Clay,* 108 Ala. 105; *Brown v. Mize,* 119 Ala. 10; *Craft v. Williams,* 131 Ala. 60; *Taylor v. Crook,* 136 Ala. 371. Title was not divested by the decree of insolvency.— Sec. 2553, 2555 and 2558, Code 1876; *Kilgore v. Kilgore,* 103 Ala. 614; *Bush v. Coleman,* 121 Ala. 548. The estate having been declared insolvent prior to the adoption of the Code of 1886, the proceedings were governed by the provisions of the Code of 1876, and under the record the proceedings were res inter alios acta as to the next of kin or legatees not affecting their rights.—*Randall v. Carter,* 62 Ala. 45, *McMillan v. Rush,* 80 Ala.403; *McGuire v. Shelby,* 20 Ala. 456. A stranger to a deed is neither bound by its recitals nor can he take advantage of them by way of estoppel.—*Wood v. Lake,* 62 Ala. 489; *Leech v. Karthaus,* 141 Ala. 513. The deed from Henley to Rucker was sufficient to convey the legal title. —*Craft v. Williams, supra; Spears v. Banks,* 114 Ala. 323. The description was sufficient.—13 Cyc. 543; *Carter v. Holoman,* 60 Mo. 498; *Cottingham v. Hill,* 119 Ala. 353; *O'Neal v. Seixas,* 85 Ala. 80; *Howze v. Dew,* 90 Ala. 178. Appellant was entitled under the facts to maintain the statutory bill.—*O'Neal v. Prestwood, supra; Friedman v. Shamlin,* 117 Ala. 458; *Kendrick v. Colyar,* 143 Ala. 600. Neither party is entitled to any final relief beyond a determination of the status of the title as

between them.—*Adler v. Sullivan,* 115 Ala. 585; *Dickinson v. Harris,* 155 Ala. 615. No title was acquired by the appellee through the deeds of the administrator. First, because there was no testamentary charge of debts upon lands of the estate.—*Wollf v. Loeb,* 98 Ala. 426; *Carrington v. Manning,* 13 Ala. 611; *Lewis v. Ford,* 67 Ala. 143; *Starks v. Wilson,* 65 Ala. 476; *Steele v. Steele,* 64 Ala. 438. Second, because the chancery court possesses in such matter only the statutory jurisdiction of the probate court.—17 A. & E. Enc. of Law, 1075, 1079; *Goodman v. Winter,* 64 Ala. 410; *Goodwater Warehouse Co. v. Street,* 137 Ala. 621; *Chandler v. Hanna,* 73 Ala. 390; *Gunn v. Howell,* 27 Ala. 663; *State v. M. & G. R. R. Co.,* 137 Ala. 621; *Scott v. Ware,* 64 Ala. 182; 138 N. Y. 422; *Tygh v. Dolan,* 95 Ala. 269; *Cowles v. Pollard,* 51 Ala. 445. The right to sell land is statutory, and the remedy for its enforcement exclusive.—*Janney v. Buell,* 55 Ala. 408; *Phillips v. Ashe,* 63 Ala. 413; *Chandler v. Hanna, supra; Sheffield City Co. v. Tradesman Bank,* 131 Ala. 185; *Stovall v. Clay, supra,* and other authorities cited. No divestiture of title occurs, unless the decree is based upon proceedings affirmatively appearing from the record to have been sufficient to confer jurisdiction to order the sale and conveyance. —*Robinson v. Bradford,* 73 Ala. 116; *Reddick v. Long,* 124 Ala. 260; *Wilson v. Holt,* 83 Ala. 528; *Chamblee v. Cole,* 128 Ala. 651. In order for the accomplishment of an effective sale of lands to pay debts the statutory requirement must be complied with, and the petition must contain an accurate description of the land. Secs. 158 and 327, Code 1896; *Little v. Marx,* 145 Ala. 620; *Henley v. Johnson,* 134 Ala. 646; *Gilchrist v. Shackelford,* 72 Ala. 7, and authorities cited. A sale may be made only for some purpose authorized by statute.—*Riddle v. Hill,* 51 Ala. 224; *Wilson v. Armstrong,*

[Rucker v. Tennessee Coal, Iron & Railroad Company]

42 Ala. 168.  Petition must show ownership by decedent. —*Jones v. Woodstock I. Co.,* 95 Ala. 551, and the sale must be public.—*Cruikshanks v. Luttrell,* 67 Ala. 321; *Bozeman v. Bozeman,* 82 Ala. 289; Secs. 146, 169, 172, Code 1896; *Roy v. Roy,* 48 South. 793; *Cottingham v. Moorc,* 128 Ala. 214.  Sales not made in strict compliance with the statutory requirement are coram non judice and void, and may be attacked collaterally or otherwise.—Authorities supra.  No title was acquired by appellee from Henley, as the deed was merely a quit claim deed, and they do not occupy the position of purchaser for value and without notice.  A grantee in a quit claim acquires no more than the grantor had at the time of the execution of the deed.—*O'Neal v. Prestwood, supra; O'Neal v. Seixas, supra; Webb v. Elyton L. Co.,* 105 Ala. 471; *Derrick v. Brown,* 66 Ala. 162.

PERCY, BENNERS & BURR, and TYSON, WILSON & MARTIN, for appellee.  The court judicially knows that the two parcels of land described were separate forties widely separated under distinct claim of title, and therefore the bill was multifarious.—*Slosson v. McNulty,* 125 Ala. 124.  The deed from Henley to Rucker was a quit claim deed, and both Rucker and Henley were parties to the chancery suit, and the deed was made when the suit was pending and after the estate had been declared insolvent.  It therefore conveyed nothing to Rucker. —*Boddie v. Ward,* 151 Ala. 207; *Banks v. Spears,* 97 Ala. 560.  Rucker took pendente lite, and hence, could not attack any deed that Henley could not attack.— *Stein v. McGrath,* 128 Ala. 175; *Morton v. Selma Ry. Co.,* 79 Ala. 605. The decrees directing a sale of the land made the sale res judicata both as to Henley and Rucker. —*Comer v. Shehee,* 129 Ala. 588; Bigelow on Estoppel, 144.  A party to a chancery suit is precluded by a chan-

cery sale from thereafter asserting title to the land so sold.—*Lee v. Thompson,* 99 Ala. 95; *McDonald v. Mobile L. I. Co.,* 65 Ala. 358; *Robinson v. Walker,* 81 Ala. 404; *Holden v. Rising,* 77 Ala. 515. Where jurisdiction has attached, the final, order, judgment or decree is not a nullity, and cannot be collaterally impeached.—*Todd v. Flournoy,* 56 Ala. 99; *Pollard v. A. F. L. M. Co.,* 103 Ala. 295; *Moore v. Cottingham,* 113 Ala. 148; *Logan v. Central I. & C. Co.,* 139 Ala. 548. · The present suit constitutes such a collateral attack, and the heir cannot make such an attack where the estate has been declared insolvent, and the land sold under an order of court in the administration of the insolvent estate.— *Friedman v. Shamlin,* 117 Ala. 454; *King v. Gilreath,* 49 South. 860. The failure to make the heir a party is not available to him in a collateral attack on the proceedings leading to the sale.—*Lyons v. Hamley,* 84 Ala. 197; *Haynes v. Simpson,* 143 Ala. 554. A court of equity takes jurisdiction and applies its own rule to the administration of an estate.—*Key v. Jones,* 52 Ala. 238; *Bragg v. Jones,* 71 Ala. 151; *Sharp v. Sharp,* 76 Ala. 312; *Tygh v. Dolan,* 95 Ala. 269; *Ex parte Lunsford,* 117 Ala. 224. In a petition for sale of land to pay debts, it is unnecessary to aver the nature or extent of decedent's interest.—*Henley v. Johnson,* 134 Ala. 646. If the complainant is without title, the bill should be dismissed whether respondent has any title or not.—*Dickinson v. Harris,* 155 Ala. 613; *I. B. & L. Assn. v. Stocks,* 124 Ala. 109. Lack of advertisement of the sale will not avoid the title on collateral attack.—*Matheson v. Hearin,* 29 Ala. 210; *Field v. Goldsby,* 28 Ala. 218. The pleadings in the chancery suit were sufficient to give the court jurisdiction to make the sale.—Section 327, Code 1896; *Goodman v. Winter,* 64 Ala. 410; *Harris v. Parker,* 41 Ala. 604; *Garner v. Tony,* 107 Ala. 352; *Arnett*

*v. Bailey,* 60 Ala. 435; *Foxworth v. White,* 72 Ala. 230; *Spragins v. Taylor,* 48 Ala. 520; 20 Am. St. Rep. 183; 22 S. E. 512; 41 Ind. 515. The unrecorded deed from Henley to Rucker was not notice to appellee.—Sec. 3383, Code 1907; 57 C. C. A. 301; 167 Mass. 443; 149 N. Y. 447; 29 L. R. A. 582; 148 U. S. 21. The consideration for the sale was applied to the payment of Peter's debt, and his heirs cannot avoid the sale.—*Bell v. Craig,* 52 Ala. 216; *Goodman v. Winter, supra; Robertson v. Bradford,* 73 Ala. 116; *Marx v. Clisby,* 130 Ala. 502. The general description of the land was sufficient to convey the interest of decedent in the undisposed of land.—13 Cyc. 534; *Howze v. Dew,* 90 Ala. 178; *De-Bardelaben v. Stoutz,* 48 Ala. 643; *Wright v. Ware,* 50 Ala. 549; *Money v. Turnipseed,* 50 Ala. 499; *Smith v. Flournoy, supra; Saltonstall v. Riley,* 28 Ala. 164; *King v. Kent,* 29 Ala. 542.

SAYRE, J.—This is a statutory bill by the complainant, appellant here, to quiet title to land. The cause was submitted for final decree on the pleading and an agreed statement of facts, and from a final decree in favor of the defendant the present appeal is prosecuted.

In the bill the land in controversy is described as S. W. ¼ of the S. W. ¼ of section 28, township 17 S., range 4 W., and N. W. ¼ of N. W. ¼ of section 29, township 17 S., range 6 W., situated in Jefferson county, Ala. The court judicially knows that here are two separate tracts. There was no demurrer; but by its answer defendant brought to the court's attention the fact that it claimed the separate tracts under distinct claims of title, and thereupon contends that the bill is multifarious and should have been dismissed for that reason on final hearing. There is no merit in the contention. Not only does the statute prohibit the defense unless

[Rucker v. Tennessee Coal, Iron & Railroad Company]

taken by demurrer (Code, § 3095), but one purpose of it, which is to prevent the loading of each defendant with an unnecessary burden of costs by swelling the pleadings with the state of the several claims of the other defendants with which he has no connection, cannot be subserved except the defense be so taken. While admitting the defense in proper cases, the courts also keep in view the policy of preventing a multiplicity of suits. In the case presented by the bill, in which a single complainant proceeds against a single defendant in respect to separate tracts claimed, as the event has shown, by the complainant under one title and by the defendant under titles much the same as to each tract, it is manifestly to the advantage of the parties that the controversy as to both tracts be settled in one suit.

This land belonged in his lifetime to one Thomas Peters, who died in 1883. Both parties trace their title back to him as a common source. Neither party has had possession, so that the issue is one of title, drawing to it the constructive possession of the property in question, with the burden upon complainant to show a legal title in order to maintain his bill. This burden the complainant undertook to discharge by showing a quitclaim of both tracts executed and delivered to him in 1892 by Thos. P. Henly, sole heir at law and devisee of Peters. But in 1885 the estate of Peters had been decreed to be insolvent by the chancery court of Jefferson to which the administration had been duly removed. One insistence on behalf of the appellee is that the decree of insolvency ipso facto divested all title to the real estate of Thomas Peters, deceased, out of his heir and devisee, and that therefore complainant took nothing by his deed from Henley.

As at common law, lands pass to the heir or devisee eo instante at the death of the ancestor, subject only to be interrupted by the exercise by the personal representative of the powers conferred on him by the statutes. The heir or devisee may alien the lands, the alienation being subject to and not frustrating the statutory powers of the personal representative.—*Cruikshank v. Luttrell,* 67 Ala. 318. The decree of insolvency under the Code of 1876, of force at the time, merely ascertained as between the personal representative and the creditors the status of the estate, and operated to transfer to the chancery court in the conduct of the administration exclusive jurisdiction of all claims against the estate. Under the statute of that date, creditors were the only persons to whom notice of the proceeding for a decree of insolvency was required, who were barred by the decree, or against whom it was evidence that the estate was insolvent. As to all others it was res inter alios acta, not affecting their rights, and not evidence as against them of any fact ascertained by it.—*Randle v. Carter,* 62 Ala. 102; *McMillan v. Rushing,* 80 Ala. 402; *Kilgore v. Kilgore,* 103 Ala. 614, 15 South. 897. Appellee relies upon *Boddie v. Ward,* 151 Ala. 198, 44 South. 105, as sustaining its contention that the decree of insolvency divested the legal title to the lands of the estate out of the heir. But we do not so read the case. There was no decision that a decree of insolvency vested the legal title of decedent's estate in the personal representative. There was in that case no occasion, nor can there be in any case any necessity, for such a doctrine. The personal representative may maintain ejectment in his own name for the lands of his intestate or testator; but this is not because any title resides in him, but because possession is necessary to the exercise of his statutory authority.—*McKay v. Broad,* 70 Ala. 377; *Wilson*

*v. Kirkland,* 172 Ala. 72, 55 South. 174. In the case relied upon the heir was attacking his own deed to the personal representative of his ancestor on the ground that it had been procured by fraud and undue influence. Notwithstanding a previous decree of insolvency, the statement of the opinion in one place is that "the administrator was constituted by the conveyance the repository of the legal title." And the ruling was that, to show a beneficial interest in the property so conveyed, it was necessary for the heir to negative a recital of the deed to the effect that the estate had been judicially declared insolvent—by which, we take it, was meant to say that the fact recited must be negatived—"as well as affirm the solvency of the estate; and this, for the obvious reason that he is attacking the validity of a title consequent upon his deed." So then, unless the title to these lands was divested out of Henley, or his vendee, by subsequent proceedings for the sale of them, had in the exercise of jurisdiction legally acquired and exercised in the course of administration, or, for reason urged and to be considered, Henley and his alienee, the complainant, are now estopped to deny the validity of those proceedings, Henley's deed did pass the title of his ancestor to complainant, and he is entitled to a decree.

On June 21, 1902, defendant (appellee) took Henley's quitclaim to both the tracts in suit, and had the same recorded forthwith. Complainant's deed was not recorded until August 1, 1906. By its deed defendant did not acquire anything which the grantor had previously conveyed to another, though the prior deed was not recorded.—*Webb v. Elyton Land Co.,* 105 Ala. 471, 18 South. 178; *Derrick v. Brown,* 66 Ala. 162. "By the prevailing weight of authority the grantee in a quitclaim deed cannot be accorded the favored position of a purchaser for value and without notice; the reason

[Rucker v. Tennessee Coal, Iron & Railroad Company]

being that the instrument purports to convey only such interest as the grantee may then have in the property, and thus by its own terms puts the purchaser upon inquiry as to any and all defects that may exist in the title, by way of outstanding incumbrances, equities, and the like."—23 Am. & Eng. Encyc. p. 510. Such is the law of this state.—*Wood v. Holly Mfg. Co.*, 100 Ala. 326, 13 South. 948, 46 Am. St. Rep. 56; *O'Neal v. Seixas*, 85 Ala. 80, 4 South. 745; *Barclift v. Lillic*, 82 Ala. 319, 2 South. 120, authorities last above.

But to the land in section 28 defendant has the administrator's deed dated January 8, 1903. This deed was made under authority of the following proceedings in the chancery court: In December, 1902, the administrator filed his petition, alleging the previous decree of insolvency and the continuance of that status of the estate of his decedent; "that in his lifetime and for many years previous to his death decedent dealt largely in the purchase and sale of lands in Jefferson and Walker counties; that from time to time he bought the entire estate or minerals in probably as much as 100,000 acres of land; that he made many sales, trades, and mortgages of same, and at the time of his death was in possession of a very small portion of this land so far as petitioner can ascertain. Your petitioner further states that, since he was discharged as administrator in chief, he discovered that the records of deeds in Jefferson and Walker counties show no conveyance by said decedent of the surface rights in and to a number of tracts of land, nor of the minerals and mineral rights in and to a few tracts which appear of record to have been conveyed at one time or another to decedent." Then followed an averment that the defendant in this cause, the Tennessee Company, claimed title to said lands and was in adverse possession of a part of them, and a descrip-

tion of the lands according to the government survey, amounting to about 2,500 acres and including the tract in controversy in section 28. The effect of further averments is that the Tennessee Company, defendant here, had offered to compromise the question of ownership by paying a price in excess, in administrator's opinion, of any price decedent's interest in the lands might be expected to bring at public sale. The prayer of the petition was that Thomas P. Henley—of whom it is to be inferred, from facts shown in various parts of the record, including a recital in his deed to complainant, in 1892, and from the course adopted by the court in acting on this petition, that he was of age at the time— be given notice, and that a reference be ordered to ascertain whether it would be to the interest of the estate and the creditors thereof to accept the proposed compromise. The decree of reference recites a submission by agreement of the solicitors for the administrator and Thomas P. Henley on the petition, and required notice of the time of holding the same to be given to Henley, "or else that same be held at such time and place as may be agreed on by said administrator and Thomas P. Henley or their solicitors of record." Thereafter on the coming in of the register's report reciting that it had been held in strict accordance with the decree, and favoring the compromise, a decree was passed on January 8, 1903, confirming the report and ordering a deed to defendant on its compliance with the terms proposed. Regarding this title defendant says it was acquired as the result of a due course of administration to which complainant's grantor, Henley, was a party; that Henley is bound by the proceeding, and so must his grantee be bound. The general scope of administration "involves all which may be done rightfully in the preservation of the assets, and all which may be done legally

by the administrator in his dealings with creditors, distributees, or legatees, or which may be done by them in securing their rights." (*Martin v. Ellerbe's Adm'r*, 70 Ala. 326); but, as we have seen, the general course of administration, even when carried to a decree of insolvency, does not divest the title of the heir. For that a special proceeding is necessary. The special proceeding in this case by which defendant acquired its title was had long after Henley's deed to complainant. But complainant took Henley's title subject to the administrator's right by proper proceedings to sell decedent's title for the payment of debts. The question, then, is whether the proceeding for compromise was within the jurisdiction and competency of the chancery court. "Though the proceedings for the sale occurs in the general course of administration, it is a distinct proceeding in the nature of an action, in which the petition is the commencement and the order of sale is the judgment, * * * and the petition must furnish materials for the judgment."—2 Freeman on Void Judicial Sales, § 11. It has been repeatedly decided here that, in the absence of a substantial compliance with statutory provisions regulating and defining the grounds of jurisdiction, the proceedings in the probate court are coram non judice, and are void.—*Wilburn v. McCalley*, 63 Ala. 436. The existence of jurisdiction is not inferred from an attempt to exercise jurisdiction; the jurisdictional facts must affirmatively appear.—*Goodwater Warehouse Co. v. Street*, 137 Ala. 621, 34 South. 903. Nothing is presumed in favor of the record.—*Wilson v. Holt*, 83 Ala. 528, 3 South. 321. All this is because probate courts have no general authority to dispose of an estate in process of administration; their powers of disposition being special and limited. Applying the foregoing principle to the proceeding in this case, com-

plainant contends that the petition or application for
authority to close with the proposed compromise as a
means of disposing of decedent's interest was fatally
defective and insufficient to confer jurisdiction, in that
it failed to show that decedent died *seised* of an interest
in the land. We have quoted the averment as to that.
The statute prescribes no form of averment. It au-
thorizes a sale of "the lands of an estate."—Code, §
2621. On an appeal from an order of the probate court
made in the course of the administration of this same
estate, this court held sufficient an averment that "de-
cedent died *seised* and possessed of the following de-
scribed real estate, to wit, certain interests and rights,
not definitely known to your petitioner in and to about
48 tracts of land," etc., that is, this description of the
character and extent of decedent's interest was held suffi-
cient, the court says: "It is of no consequence that
the interests and rights of the decedent in and to the
lands were not definitely known to the petitioner. The
fact necessary to be averred is that the decedent owned
either a legal or equitable right or interest in the lands
sought to be sold."—*Henley v. Johnson,* 134 Ala. 646,
32 South. 1009, 92 Am. St. Rep. 48. In that case, how-
ever, the petition was held to be defective for that the
lands were not accurately described. The attack here
made upon this proceeding is collateral. In such case
this court, in the observance of that policy which favors
the upholding of titles growing out of proceedings for
the sale of land, especially where the heir is of full age
and is made a party, has frequently held that the lan-
guage of the petition through which jurisdiction is as-
sumed should be construed most favorably to the main-
tenance of the decree of sale; that the petition will be
taken as it is reasonable to infer that it was understood
in the probate court.—*Garrow v. Toxey,* 171 Ala. 644, ·

54 South. 557, and cases there referred to. There are others to the same effect. The authority of these cases, and the wise policy shown by them, require us to hold that the petition in this case sufficiently described decedent's interest in the lands which it was the purpose of the administrator to have sold; would have conferred jurisdiction upon the probate court had the proceedings been there; and hence was sufficient to invoke the jurisdiction of chancery to which the administration had been duly removed.

But appellant further observes of the petition that it was not a petition to sell lands of the decedent to pay debts, for it asked authority to carry into effect an agreement, reached by private negotiations, for a sale by way of compromise, and inquiries: From what source did the court get its power to authorize any such sale or compromise? We answer: From its original general jurisdiction for the administration of estates. The administration had been removed into the chancery court by a proper decree. It has been repeatedly said that in such a suit the chancellor will apply the law controlling the settlement of administrations in the court of probate, but will proceed according to the rules and practice of the court of equity. An examination of the cases in which it has been said the chancery court will apply the law of administrations as it prevails in the court of probate, says BRICKELL, C. J., in *Ex parte Lunsford*, 117 Ala. 221, 23 South. 528, "will show that no more was intended than that the court takes jurisdiction of the administration in the plight and condition in which it was in the court of probate, and will exercise whatever of statutory jurisdiction or authority that court could have exercised in drawing the administration to a final settlement. In *Roy v. Roy*, 159 Ala. 555, 48 South. 793, reviewing on appeal an order of sale

for distribution, it was held that, as the only authority
for any court ordering the sale of a decedent's land for
distribution is found in the statute, the requirements
of the statute must be followed in the chancery as well
as in the probate court. This case was followed in
*Hardwick v. Hardwick,* 164 Ala. 390, 51 South. 389. It
seems to have been the purpose of the act of April 21,
1911 (Gen. Acts 1911, p. 574), to change the rule of
these cases. The rule of these cases, however, affected
only sales for distribution. The power to order the
sale of real estate for the payment of a decedent's debts,
where the personal estate is insufficient, is ascribed to
chancery courts, and is generally exercised by them in
this and those other states of this country in which such
jurisdiction is not vested exclusively in the probate
courts.—2 Woener's Law of Administration, § 463. This
was not the case in England for the reason that there
the lands of a decedent were not until recently liable
for his debts. The practice of the chancery court to au-
thorize private sales, in those exceptional cases in which
such method seems likely to produce the best results, is
well established.—Dan. Ch. Pl. & Prac. p. 1293; *Cox
v. Price* (Va.) 22 S. E. 512. Such a sale cannot preju-
dice the heir, for, as was observed in *Roy v. Roy, supra,*
the sale, whether public or private, must be confirmed
by the court after hearing the parties in interest. How-
ever those considerations now mentioned by the com-
plainant as affecting the propriety of the sale under the
conditions shown might have moved this court to a re-
versal on a direct attack by appeal, the petition filed
was sufficient to invoke the jurisdiction and to authorize
a sale in the method proposed thereby and adopted by
the court, and on collateral attack the result of its pro-
ceeding is beyond question. The doctrine is summed
up by BRICKELL, C. J., in *Friedman v. Shamblin,* 117

Ala. 462, 23 South. 823, in this language: "It has long
been the settled doctrine of this court that such irregu-
larities and defects in the proceedings to sell the lands
of a decedent for the payment of debts are unavailable,
in a collateral proceeding, to impeach the validity of
the sale or the title of one claiming under it. This doc-
trine is a rule of property, which judicial power cannot
change. When the record affirmatively shows that the
court had jurisdiction to order the sale by a petition
setting forth the necessary jurisdictional facts, that the
land was sold by an administrator under its order, the
sale confirmed, the purchase money paid, and a deed ex-
ecuted to the purchaser in obedience to the court's man-
date, the action of the court is conclusive until vacated
in a direct proceeding, and neither the sale nor the
title of the purchaser acquired thereunder can be col-
laterally impeached on account of any irregularities in
the proceedings." Our conclusion is that the defendant
showed the better title to the land in section 28.

In 1905 the administrator again showed to the court
that he had discovered still other lands in which dece-
dent appeared to have had an interest at the time of
his death, many different parcels of land lying in Jef-
ferson, Walker, Tuscaloosa, and Fayette counties being
described in the petition, and asked that he be authoriz-
ed to sell the same for the payment of claims against the
estate which had been allowed. This petition also con-
tained the following averment: "Petitioner avers that
it is advisable that the administration of said estate
be settled as soon as may be, and that such funds as
are in the hands of petitioner be distributed among
those entitled thereto; that the petitioner, as aforesaid,
believes that all of the land subject to any claim of said
estate has been previously disposed of except that set
out in section 4 of this petition; but that there may be

some parcels undiscovered. And petitioner avers that for the purpose of settling said estate and realizing as much as possible for the land hereinabove specifically described, it would be advisable and to the interest of said estate that same be sold together with all the lands in the state of Alabama, in or to which the said Thomas Peters had any right, title, or interest at the time of his death, and not heretofore conveyed under orders and decrees passed in this cause." The petition alleged that "Tom P. Henley, whose residence is unknown to your petitioner, is the only heir of decedent." On this petition proceedings were had, on notice by publication, resulting in a decree for a public sale of the lands described in the petition and as well "all the lands situated in Jefferson, Walker, Tuscaloosa, and Fayette counties in which Thomas Peters, deceased, had any right, title, or interest at the time of his death, and which have not been heretofore conveyed under the decrees of this court." Accordingly, a sale was had and confirmed, and a deed made to the purchaser, J. De B. Hooper, of the lands described and decedent's interest in all other lands, not described, lying in said counties. The land in controversy, and lying in section 29, was not described in the petition, nor in the administrator's deed, nor at any place in the record of the proceeding. It went, if at all, under the general description of any lands in which decedent may have had an interest at the time of his death. As for the land included in this general designation, which was no description at all, we are of opinion that the petition was insufficient to confer jurisdiction, that the proceeding had thereon was ineffectual to pass title, and neither the heir nor those claiming under him are estopped to deny its validity. The insufficiency of the petition to confer jurisdiction on the probate court is palpable. The statute requires

that the application must describe the lands accurately. —Code, § 2622. And it would result from general principles, applicable alike in all courts, that in a proceeding to dispose of lands for the payment of debts—a proceeding in rem according to the uniform decisions of this court—the res must be described in such way as to inform the court of the subject-matter of the jurisdiction to be exercised and the effect and application of the judgment to be rendered. Judgments respond to the issues proposed to the court, and they do not speak in the language of doubt or speculation. It is necessary to their validity that they should be certain and definite, or capable of being made so by proper construction, and to this end they should, in connection with the record, show the matter disposed of and the particular effect of the disposition made.—23 Cyc. 691. Otherwise, in a proceeding of this character, the heir cannot know of what land the decree deprives him, nor the purchaser what he has acquired. The petition and the judgment, so far as they attempt to deal with decedent's interest in lands in no way described, are void for uncertainty.

For these reasons the decree of the court below will be reversed and rendered. The decree will declare, as between the parties to this record, defendant's title to the land described in the bill as lying in section 28, and complainant's title to the land described as in section 29.

Reversed and rendered.

All the Justices concur.